HAWKES, C.J.,
Dissenting.
I respectfully dissent. I believe the trial court correctly concluded the 2007 “clarification” was invalid. In awarding the Petitioner the right to have his long expired health insurance reinstated, without requiring him to pay past premiums, the arbitrator exceeded his authority and entered an order beyond the scope of the arbitration. See § 682.13(l)(c) Fla. Stat. (2008)
The following facts are relevant: on May 5, 2001, the Petitioner was fired; on July 1, his health insurance coverage was terminated; and on July 13, he was officially classified as “disability retired.” Pursuant to Florida Administrative Code Rule 60P-2.011, Petitioner was entitled to reinstatement of his health insurance coverage upon obtaining “disability retired” status on July 13. However, in order to have his coverage reinstated, he was required to submit a reinstatement application to his former provider within 31 days after approval of the “disability retirement.”
Rule 60P-2.011 provides:
(b) The employee may elect not to continue coverage in the Health Program pending the determination of disability retirement and thereby allow such coverage to terminate on the last day for which contributions have been paid. If coverage is allowed to terminate and:
1. The disability retirement is subsequently approved, the employee may apply for reenrollment in the Health Program subject to the following requirements:

a. The employee shall complete an application in accordance with paragraph 60P-2.011(l)(a), F.A.C., indicating the disability retirement status and submit to the former agency personnel office who must forward such application to the Department no later than SI calendar days after the date of approval of the disability retirement;

*756 b. The retiree shall pay all back premiums from the date of termination of coverage within 31 calendar days after the date of approval of the disability retirement since coverage must be continuous.
Fla. Admin. Code R. 60P-2.011. (emphasis added).
Petitioner did not apply for reinstatement of his health insurance within 31 days of receiving “disability retired status.” Because there may have been some confusion due to the particular facts of this case, DMS sent a letter to Petitioner, dated February 14, 2002, offering him the opportunity to be reinstated upon payment of applicable back premiums (as required by rule 60P-2.011). The back payments at that time totaled $2,148.62. Petitioner did not act on the invitation and made no effort to have his health insurance coverage reinstated.
Two years and nine months after DMS’ offer of reinstatement, the original arbitration award was issued. During the arbitration, the arbitrator was charged with determining how Petitioner being fired on May 5, 2001, impacted his disability retirement. The arbitrator ultimately decided to “retroactively make [Petitioner] whole by ... paying to him any applicable ... health, life and group insurance benefits ... due and owing him if he disability retired on June 1, 2001.” Of course, rule 60P-2.011 would still require the Petitioner to repay back premiums.
Nearly 6 years after the Petitioner obtained disability retired status, the arbitrator entered a clarification. In the clarification the arbitrator provided the Petitioner two insurance related options: (1) pay all back premiums and receive retroactive coverage; or (2) re-join prospectively (excusing his lack of participation in the insurance program for six years). Such an award was not part of the original grievance, nor is it a determination pertinent to the resolution of the original issue.
The stated goal of the arbitration was to make Petitioner whole for being improperly fired while his disability retirement approval was pending. Had Petitioner not been fired on May 5, he would have continued to pay his insurance premiums in exchange for coverage until the day his disability retirement took effect. Upon retirement, he would have had the option to continue coverage by having his monthly premium deducted from his disability retirement pension check.
Obviously, Petitioner was fired on May 5 and DMS terminated his health insurance coverage. However, upon learning of the Petitioner’s subsequent disability retirement, DMS offered him the opportunity to retroactively enroll in its insurance program by paying the back premiums. Had Petitioner never been fired and wished to continue his coverage, he would have had to pay these premiums when they were due. Thus, it was entirely reasonable for DMS to conclude that if Petitioner were to be awarded full back pay, he should be required to pay the premiums that would otherwise have been deducted from it.
As noted, the arbitrator determined Petitioner could opt to resume coverage without being subject to back premiums. Basically, the arbitrator “made Petitioner whole” by awarding him not only a free pass on the $2,148.62 that he owed in back premiums as of February 14, but also a free pass on several years of additional back premiums totaling roughly $16,700.00. This was far more than making Petitioner whole and is in direct conflict with rule 60P-2.011.
Petitioner was eligible to apply for reinstatement of his health insurance immediately after being classified as disability retired. He simply neglected to do so *757 (even after the February 14, notice). As a result, his ability to restore coverage lapsed. There is no statutory authority entitling Petitioner to reinstatement -without cost, simply because he has come to regret his voluntary decision to decline to participate in the retirement health insurance program. Accordingly, I believe our obligation under the law is to affirm.